CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/8/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **JONNA B.[1],** <br> **Plaintiff,** | ) <br> ) <br> ) |
| v. | )    Civil Action No. 6:21-CV-49 <br> ) |
| **KILOLO KIJAKAZI, Acting** <br> **Commissioner of Social Security,** | ) <br> ) <br> ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jonna B. ("Jonna") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381–1383f. Jonna alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to properly consider the impact of her fibromyalgia on her physical residual functional capacity ("RFC"); and (2) improperly rejecting the opinions of her treating physicians. Jonna also asserts that this case should be remanded to the Commissioner for a *de novo* hearing with a new "properly appointed" ALJ because (1) the ALJ who adjudicated this case was not properly appointed; and (2) the ALJ erroneously relied upon a prior denial decision that was unconstitutional. I agree that the ALJ's analysis of the physicians' opinions is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Jonna's Motion for Summary Judgment (Dkt. 14),

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

**DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 15), and **REMANDING** this case for further administrative proceedings consistent with this opinion.[2]

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Jonna failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually

---

[2] I do not address Jonna's allegations regarding constitutional issues in this opinion, consistent with the "general policy of federal courts to avoid addressing broad constitutional issues unless their resolution is imperative in the context of the case at hand." Karriem v. Barry, 743 F.2d 30, 38–39 (D.C. Cir. 1984) (citing cases); see also, In re Snyder, 472 U.S. 634, 642 (1985) ("We avoid constitutional issues when resolution of such issues is not necessary for disposition of a case."). Because I recommend remand of Jonna's claim for further administrative proceedings due to lack of substantial evidence, it is unnecessary for the Court to address her broader constitutional claims at this time, and they may not recur with additional administrative proceedings.

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's decision fails to properly explain why she discounted the opinions of the treating and consultative physicians in the record.

## CLAIM HISTORY

Jonna filed for SSI and DIB benefits in May 2019, claiming that her disability began on July 7, 2018. R. 28.[4] The state agency denied Jonna's claims at the initial and reconsideration levels of administrative review. R. 137–87. ALJ Suzette Knight held a hearing on February 16, 2021, to consider Jonna's claims for SSI and DIB, which included testimony from vocational expert Lori Cowan R. 52–76. Jonna was represented by counsel at the hearing. On March 15,

---

[4] Jonna's date last insured was December 31, 2018; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

3

2021, the ALJ entered her decision considering Jonna's claim under the familiar five-step process[5] and denying her claim for benefits. R. 28–44.

The ALJ found that Jonna suffered from the severe impairments of obesity, osteoarthrosis and allied disorders, diffuse diseases of connective tissue, and spine disorders. R. 32. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 33–35. The ALJ concluded that Jonna retained the residual functional capacity ("RFC") to perform light work, except that she can occasionally push and/or pull with the lower extremities; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl; tolerate occasional exposure to extreme cold and vibration, but never hazards, such as work at unprotected heights or moving mechanical parts. R. 35.

The ALJ determined that Jonna was capable of performing her past relevant work as an office cleaning/housekeeping cleaner. R. 43. Thus, the ALJ concluded that Jonna was not disabled. R. 44. Jonna appealed and the Appeals Council denied her request for review on August 13, 2021. R. 1–6.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

# ANALYSIS

I. **Medical History and ALJ Decision**

   a. **Medical History**

Jonna was 55 years old on her alleged onset date, and previously worked as an office cleaner and hospital custodian. R. 60–63. Jonna is obese and has a history of treatment for arthritis, osteopenia of the spine, GERD and fibromyalgia. Jonna was diagnosed with and treated for fibromyalgia, chronic pain syndrome, and osteoarthritis throughout the relevant period. R. 691–715, 914–45, 1407–17. Jonna consistently complained of chronic pain, ongoing pain in her legs and arms, chronic knee pain, fatigue and generalized pain in her joints, joint inflammation, and back pain. R. 692, 912, 920, 925, 927, 931, 934, 1407. Jonna reported chronic pain and limited mobility; sometimes being unable to get out of bed due to back pain; and using a cane for ambulation when she walked long distances. R. 934. Jonna's physical exams were generally positive for arthralgias, joint stiffness, joint swelling, muscle pain, neck pain, and decreased range of motion. R. 595, 692, 912, 920, 932, 935, 1408. Jonna was treated with medication, muscle relaxers, physical and aquatic therapy.

   b. **Medical Opinions**

On September 19, 2019, state agency physician Robert McGuffin, M.D., reviewed Jonna's records and determined that she could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; frequently balance; and never climb ladders, ropes or scaffolds. R. 103–04. Dr. McGuffin noted that Jonna had knee tenderness and swelling at times, mild osteoarthritis, fibromyalgia tender points, and occasional headaches. R. 104. Dr. McGuffin also noted that Jonna continued to complain of fibromyalgia symptoms on exams in

2019. R. 105. On July 24, 2020, state agency physician William Rutherford, Jr., M.D., reviewed Jonna's records and agreed with Dr. McGuffin's proposed limitations. R. 160–62.

On July 12, 2020, Jonna was examined by consultative physician Matthew Wilson, M.D. Dr. Wilson noted that Jonna reported constant numbness and tingling in her fingers and hands, swelling in her ankles, osteopenia, weakness, stiffness, constant pain in her joints, especially knees, feet and ankles, lightheadedness, and headaches. Jonna reported that cold weather, activity, walking, and standing aggravate her pain. R. 782. Dr. Wilson noted that Jonna brought an assistive device to the appointment but was able to ambulate around the room without it. R. 784. Jonna had 5/5 muscle strength, no palpable muscle spasms, and normal muscle bulk and tone. R. 785. Jonna had 18/18 positive trigger points, including her bilateral occiput, trapezius, supraspinatus, gluteal, greater trochanter, low cervical, second rib, lateral epicondyle, and knee. Jonna was able to button and unbutton a shirt; pick up a coin from the table; grasp a pen; write a sentence; lift, carry, and handle light objects; and squat and rise from a sitting position without assistance. Jonna had difficulty getting down from the exam table, could not tandem walk, could not walk on heels and toes, and could not hop on either foot bilaterally. R. 785. Dr. Wilson noted that Jonna gave good effort during the examination.

Dr. Wilson concluded that Jonna could sit and stand normally in an 8-hour workday with normal breaks; can be expected to walk for 2 hours at a time in an 8-hour workday; needs an assistive device for long distances and uneven terrain; can carry 10 pounds frequently and 15 pounds occasionally; and can occasionally bend, stoop, crouch and squat due to joint pain. R. 787.

On October 8, 2020, Jonna's treating nurse practitioner, Debra Maddox, NP, completed a medical opinion re: ability to do physical activities.[6] R. 790. Nurse Maddox noted that she treated Jonna since July 2018 every three to six months, and diagnosed osteoarthritis, fibromyalgia and osteoporosis. R. 790. Nurse Maddox determined that Jonna can walk ½ block before needing to rest for pain; can sit for 20–30 minutes, and stand for 15 minutes at one time; can sit and stand for less than 2 hours in an 8-hour workday; must be permitted to shift positions at will; requires unscheduled breaks during an 8-hour workday every 30 minutes to 1 hour; must elevate her feet with prolonged sitting; requires a cane for long walks; and can lift and carry less than 10 pounds occasionally. R. 790–91. Nurse Maddox noted that these restrictions were due to Jonna's ongoing conditions of fibromyalgia and osteoporosis, which affect her upper and lower extremities, and chronic soft-tissue myofascial pain. Nurse Maddox also noted that Jonna has been out of work for 6 years due to ongoing pain and limited mobility; she sees Dr. Chirichetti for chronic pain management; and she is currently on 50mg of Tramadol every 12 hours. R. 792.

    c. **ALJ Decision**

The ALJ determined that Jonna's fibromyalgia was a non-severe impairment at step two of the decision. R. 32. The ALJ noted that the record contains several references to the diagnosis of fibromyalgia but does not reflect evidence that other disorders that could cause these repeated manifestations of symptoms were excluded; the record does not reflect the widespread pain and trigger points or swollen or tender joints consistent with fibromyalgia; the record contains a finding of 18/18 positive trigger points based on a single consultative examination with minimal record review; the record does not contain any additional findings of at least 11 positive tender

---

[6] The ALJ's decision and parties' briefs refer to the author of this opinion as "D. Moody, DMP;" however, based on the opinion and Jonna's records, it appears to be authored by her treating physician Debra M. Maddox, NP.

points or trigger points on physical examination; and there is no evidence of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. Id.

The ALJ continued to analyze Jonna's complaints, symptoms and treatment in step four of the decision, including those relating to fibromyalgia. The ALJ set forth Jonna's treatment history in detail in her opinion. R. 36–40. The ALJ reviewed Jonna's complaints of symptoms and determined that her impairments could be expected to cause her alleged symptoms; but that her statements concerning the intensity, persistence, and limiting effects of her symptoms are inconsistent and lack support and consistency with other evidence in the record. R. 40. The ALJ noted that Jonna was treated primarily with medications that were "relatively effective in controlling her symptoms when she was compliant with treatment;" and she engaged in regular exercise. The ALJ stated that "repeated physical examinations have failed to consistently reveal results that would be expected with the degree of limitations alleged," and "treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleged." R. 40. The ALJ also noted Jonna's reported daily activities of watching television and movies, going to the park, using a computer, taking medications as prescribed, managing her finances, driving a car, shopping in stores, preparing meals, performing household chores, and taking care of her personal hygiene. Id.

The ALJ found the opinions of the state medical consultants persuasive, determining that their rationale is generally consistent with the medical evidence and that the abnormal physical examination findings and radiographic studies support a light work RFC. R. 41. The ALJ determined that Jonna had further exertional limitations laid out in the RFC. Id.

The ALJ reviewed Dr. Wilson's consultative report and Nurse Maddox's medical assessment questionnaire. R. 42. The ALJ evaluated both opinions together, and found them:

8

not entirely supported by the evidence of record discussed above, including examination findings regarding physical abilities, and appear to overstate the claimant's physical abilities to stand and/or walk, as well as lift and/or carry. Additionally, the opinions are internally inconsistent with the evidence of record, including treatment notes showing that the claimant's impairments were well controlled when she was compliant with use of prescribed medications, as well as the claimants [sic] reported activities of daily living discussed above. The undersigned finds that the record does not support the sedentary exertional level, and the use of a cane as an assistive device, and finds these opinions less persuasive and inconsistent with other evidence throughout the record.

R. 42–43.

## II.     Physician Opinions

Jonna asserts that the ALJ failed to articulate any logical reasons for rejecting the opinions of Dr. Wilson and Nurse Maddox, and improperly cherry-picked evidence to support her decision. Pl. Br. Summ. J. pp. 11–12. I agree that the ALJ's decision fails to properly explain the weight she provided to the opinions of the treating and examining physicians, and thus, the court cannot determine if it is supported by substantial evidence.

Jonna filed her application in May 2019; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in her case.[7] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion.

---

[7] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

The most important factors considered are supportability and consistency.[8] Id.  The ALJ is not required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, the ALJ provided a limited explanation as to why she gave Dr. Wilson and Nurse Maddox's opinions no weight, and those explanations are not supported by the record. First, the ALJ combined her analysis of both opinions, even though they recommend significantly

---

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

10

different limitations. Thus, the court cannot distinguish the ALJ's analysis of Dr. Wilson's findings from her analysis of Nurse Maddox's conclusions. Further, the ALJ's analysis of the opinions is conclusory. The ALJ found the opinions "not entirely supported" by the evidence of record, and "internally inconsistent with the evidence of record," but failed to identify the conflicting evidence in the record or explain how she arrived at those conclusions. R. 42–43. The ALJ discounted the opinions because she found them not supported by "examination findings regarding physical abilities," and she determined that they "overstate" Jonna's physical abilities to stand, walk, lift and carry. The ALJ does not state which examination findings in the record are inconsistent with Dr. Wilson and Nurse Maddox's conclusions. The ALJ also provides no support for her finding that the opinions overstate Jonna's physical abilities.

The ALJ's analysis does not appear to account for the fact that fibromyalgia is a disease whose "symptoms are entirely subjective," and that "physical examinations of patients with fibromyalgia will usually yield normal results." Arakas v. Comm'r, 983 F.3d 83, 96 (4th Cir. 2020) (internal citations and quotations omitted). The Fourth Circuit is clear that "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." Id. at 97. The record reflects that Jonna was diagnosed and treated for fibromyalgia throughout the relevant period; consistently complained of widespread pain, weakness, lethargy; and had positive trigger points on examination.

The ALJ also stated that the opinions are "internally inconsistent with the evidence of record, including treatment notes showing that the claimant's impairments were well controlled when she was compliant with the use of prescribed medication, as well as claimants [sic] reported activities of daily living discussed above." R. 43. Once again, the ALJ's findings lack

11

sufficient explanation.  Although Jonna was prescribed medication through the relevant period, her records also reflect that she continued to complain of chronic pain issues, and her examinations reflected joint pain, stiffness and swelling, muscle pain, neck pain, and decreased range of motion. These records do not support the ALJ's blanket statement that Jonna's impairments were well controlled when she was complaint with medication. Further, the activities of daily living referenced by the ALJ in her opinion include watching television and movies, going to the park, using a computer, taking medications as prescribed, managing her finances, driving a car, shopping in stores, preparing meals, performing household chores, and taking care of her personal hygiene. R. 40.  These activities, without further explanation, do not necessarily contradict the opinions of Dr. Wilson and Nurse Maddox that Jonna is limited to a range of sedentary work.

      Stating whether an opinion is or is not "supported by" or "consistent with" the record does not qualify as *explaining* how the factors of supportability and consistency were considered for a medical source's opinions. It is the explanation that is missing here. "Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must—at a minimum—explain his or her consideration of the supportability and consistency factors." Garrett v. Kijakazi, No. 1:21-cv-46, 2022 WL 1651454, at *2 (W.D.N.C. May 23, 2022) (citing Danny Z. v. Saul, 531 F. Supp. 3d 871, 883–84 (D. Vt. 2021) (explaining that failure to "explicitly discuss the supportability and consistency of medical opinions" can result in remand)); see Crystal W. v. Kijakazi, No. 5:21-cv-27, 2022 WL 2953704, at *5 (W.D. Va. July 26, 2022) ("Although the ALJ discussed the consistency and supportability of Dr. Prieur's opinion, he failed to offer an adequate explanation for his findings with respect to the consistency of that opinion."). Indeed, in Gloria M. v. Kijakazi, this court stated, "despite the regulatory changes regarding the

evaluation of medical opinions, SSR 96-8p continues to provide that where 'the RFC assessment conflicts with an opinion from a medical source, the [ALJ] *must explain* why the opinion was not adopted.'" No. 4:20-cv-44, 2022 WL 909043, at *7 (W.D. Va. March 28, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *7 (emphasis added)).  If the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Michael B. v. Saul, No. 7:19-cv-751, 2020 WL 7497803, at *7 (W.D. Va. Dec. 21, 2020) (citing Monroe, 826 F. 3d at 190).

  While the ALJ provided reasons to give Dr. Wilson and Nurse Maddox's opinions little weight, these reasons are not "good" or reflective of the evidence in the record.  The Commissioner asserts that the ALJ's findings are supported by substantial evidence in the record, and provides citations to treatment records noting that Jonna could ambulate without an assistive device and pointing to the medical findings of the state agency physicians. However, these examples and reasoning were not included in the ALJ's analysis of Dr. Wilson and Nurse Maddox's opinions. The court cannot rely on reasoning provided by the Commissioner in briefing, rather than the ALJ's decision. Although the ALJ summarily cited to these records in a truncated fashion in the opinion, she did not provide the required explanation as to how these records contradicted Dr. Wilson and Nurse Maddox's opinions.

  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).  If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by

13

substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for her opinion. Here, the limited reasoning provided by the ALJ failed to adequately explain her decision to discredit these opinions.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Jonna's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

                                          Entered: February 8, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge